**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISON**

| | |
|---|---|
| MICHAEL SMITH, Individually and for Others Similarly Situated | Case No. 4:25-cv-44 |
| v. | JURY TRIAL DEMANDED |
| ST. AGNES HEALTHCARE PROFESSIONALS, INC. | FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1.     Michael Smith (Smith) brings this collective action to recover unpaid wages and other damages from St. Agnes Healthcare Professionals, Inc. (St. Agnes) under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*

2.     Smith worked for St. Agnes as a Caregiver.

3.     Smith and the Putative Class Members (as defined below) regularly worked more than 40 hours in a week.

4.     But St. Agnes does not pay its Caregivers, including Smith and the Putative Class Members, for all overtime hours they work.

5.     Instead, St. Agnes only paid Smith and the Putative Class Members hours these worked in excess of 40 hours in a week that were approved by St. Agnes.

6.     If St. Agnes did not approve the overtime hours Smith and the Putative Class Members worked, St. Agnes did not pay them anything for these overtime hours.

7.     But due to the nature of the home healthcare industry, Smith and the Putative Class Members are routinely forced to work "unapproved" overtime, outside of their scheduled shifts, "off the clock" to complete their job duties.

8.     St. Agnes knew, or should have known, Smith and the Putative Class Members were regularly working "off the clock" because St. Agnes expected and required these employees to do so.

9.     In fact, Smith and the Putative Class Members made multiple complaints to St. Agnes that its Vesta Timekeeping Policy resuled in the underpayment and/or outright denial of their overtime.

10.    But St. Agnes never paid Smith and the Putative Class Members for the "unapproved" overtime they worked "off the clock."

11.    Thus, under St. Agnes's common policies and practices, Smith and the Putative Class Members were denied overtime for all hours worked in excess of 40 hours in a workweek in violation of the FLSA.

12.    Smith brings this collective action lawsuit to recover the unpaid overtime and other damages St. Agnes owed to his and the Putative Class Members.

### JURISDICTION & VENUE

13.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).

14.    This Court has general personal jurisdiction over St. Agnes with respect to this action because St. Agnes is headquartered in Harris County, Texas, and conducts substantial business in this District and Division, including employing numerous workers, like Smith, in this District and Division.

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because St. Agnes maintains its headquarters in Houston, Texas, which is in this District and Division.

### PARTIES

16.    Smith was employed by St. Agnes as a Caregiver from approximately February 2024 until Present.

17.    Throughout his employment, St. Agnes classified his as non-exempt from overtime and paid on an hourly basis.

18. Throughout his employment, St. Agnes failed to pay Smith for any hours he worked in excess of 40 hours in a week that St. Agnes had not approved in violation of the FLSA.

19. Smith's written consent is attached as **Exhibit 1**.

20. Smith brings this action on behalf of himself and all other similarly situated hourly, non-exempt St. Agnes employees who were paid under St. Agnes's overtime approval policy.

21. St. Agnes classified each of these employees as non-exempt from overtime and paid them on an hourly basis.

22. St. Agnes failed to pay each of these employees for any hours they worked in excess of 40 hours in a week that St. Agnes had not approved.

23. The FLSA collective of similarly situated employees sought to be certified is defined as:

> **All current and former St. Agnes employees who were classified as non-exempt, and who were subject to St. Agnes's overtime approval policy at any time during the past three (3) years ("Putative Class Members" or "Putative Class").**

24. The Putative Class Members are easily ascertainable from St. Agnes's business and personnel records.

25. Defendant St. Agnes Healthcare Professionals, Inc. is a Texas corporation that may be served with process by serving its registered agent: **Anie Usoro, 12202 Dover St., Houston, Texas 77031**.

## COVERAGE UNDER THE FLSA

26. At all relevant times, St. Agnes was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. §203(d).

27. At all relevant times, St. Agnes was an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. §203(r).

28. At all relevant times, St. Agnes was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. §

203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cell phones, landline phones, equipment, and computers – that have been moved in or produced for commerce.

29.     At all relevant times, St. Agnes has had and has an annual gross volume of sales made or business done of not less than $1,000,000.00.

30.     At all relevant times, St. Agnes and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

31.     Likewise, St. Agnes uniformly failed to pay Smith and the Putative Class Members overtime for "unapproved" overtime hours they worked in excess of 40 in a workweek.

32.     By failing to pay Smith and the Putative Class Members for the "unapproved" overtime hours they worked "off the clock," St. Agnes violated (and continues to violate) the FLSA's requirement that it pay employees overtime compensation at 1.5 times their regular rates for all hours worked in excess of 40 hours in a workweek.

33.     St. Agnes's uniform compensation scheme of failing to pay its employees for any "unapproved" overtime hours they work "off the clock" is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

34.     As a result of St. Agnes's uniform policies and practices, Smith and the Putative Class Members do not receive overtime as required by the FLSA.

### FACTUAL ALLEGATIONS

35.     St. Agnes provides home healthcare services throughout Texas.

36.     To complete its business objectives, St. Agnes employs Caregivers to provide residential healthcare to its patients.

37.     As a Caregiver, Smith's primary job duties included traveling to the patient's residence and attending to patient healthcarecare.

38.    St. Agnes admits Smith and the Putative Class Members are non-exempt employees entitled to overtime under the FLSA.

39.    Indeed, St. Agnes uniformly classifies its Caregivers, including Smith and the Putative Class Members, as non-exempt from overtime and pays them on an hourly basis.

40.    For example, throughout his employment, St. Agnes paid Smith approximately $10.66 per hour worked.

41.    Smith and the Putative Class Members regularly work in excess of 40 hours each week.

42.    St. Agnes typically scheduled Smith and the Putative Class Members to work 8-hour shifts for 6 days a week.

43.    St. Agnes required Smith and the Putative Class Members to obtain approval for all overtime hours worked, including overtime hours that are not reflected in its Vesta timekeeping system.

44.    If St. Agnes did not approve the overtime hours Smith and the Putative Class Members worked, St. Agnes would not pay them anything for these "unapproved" overtime hours worked.

45.    Instead, St. Agnes only pays Smith and the Putative Class Members overtime compensation for hours these employees work in excess of 40 in a week that are approved by St. Agnes.

46.    But due to the nature of the home healthcare industry, Smith and the Putative Class Members are routinely forced to work "unapproved" overtime "off the clock" to complete their job duties.

47.    For example, St. Agnes requires Smith and the Putative Class Members to use its Vesta mobile application for its timekeeping and hours worked approval policies.

48.    St. Agnes only pays Smith and the Putative Class Members for hours worked, including overtime hours, as reflected in the Vesta mobile application.

49. When the Vesta mobile application does not reflect the hours worked by Smith and the Putative Class Members, St. Agnes does not "approve" the hours for compensation, including overtime hours.

50. For example, St. Agnes requires Smith and the Putative Class Members to "clock-out" after three hours worked on a given work day, and "clock-in" for the remaining five scheduled hours.

51. When Smith and the Putative Class Members failed to "clock-out" and "clock-in" at the three-hour mark, St. Agnes only pays them for three hours in a work day, despite working their entire scheduled shift.

52. St. Agnes does not compensate Smith and the Putative Class Members for the hours worked between the three-hour "clock-out" and "clock-in" period, even when it knows Smith and the Putative Class Members are performing work at the patient's residence.

53. St. Agnes also fails to pay Smith and the Putative Class Members for all hours worked when the hours are not confirmed by its Vesta timekeeping system.

54. For example, when the Vesta timekeeping system fails to accurately confirm Smith and the Putative Class Members' GPS location as the patient's residence, St. Agnes does not compensate Smith and the Putative Class Members for those unapproved hours worked.

55. When the Vesta timekeeping system automatically "updates" while Smith and the Putative Class Members attempt to clock-in at the location of the patient's residence, St. Agnes does not compensate Smith and the Putative Class Members for those unapproved hours worked.

56. When the Vesta timekeeping system suffers a "glitch" or "time-out" that decreases or erases its recording of Smith and the Putative Class Members' hours worked, St. Agnes does not compensate Smith and the Putative Class Members for those unapproved hours worked.

57.     Further, because this "off the clock" work occurs at the patient's residence and/or outside regular business hours, St. Agnes management is unavailable to approve Smith and the Putative Class Members' "off the clock" overtime.

58.     Under St. Agnes's uniform overtime approval policy, however, St. Agnes does not pay Smith and the Putative Class Members for this "unapproved" overtime these employees routinely work "off the clock."

59.     Thus, St. Agnes's uniform overtime approval policy violated the FLSA because it deprives Smith and the Putative Class Members of pay for all hours worked, including when these employees work in excess of 40 hours in a workweek.

60.     Indeed, including the "unapproved" overtime hours Smith and the Putative Class Members worked "off the clock," these employees regularly work in excess of 40 hours a week.

61.     But St. Agnes does not pay Smith and the Putative Class Members for these "unapproved" overtime hours in violation of the FLSA.

62.     St. Agnes knew, or should have known, Smith and the Putative Class Members were regularly working "unapproved" overtime hours "off the clock" because St. Agnes expected and required these employees to do so.

63.     But St. Agnes never paid Smith and the Putative Class Members for the time they worked "off the clock," including when they worked in excess of 40 hours in a single workweek.

64.     Likewise, St. Agnes never paid Smith and the Putative Class Members for the hours they worked in excess of 40 in a week that St. Agnes did not approve.

65.     Thus, under St. Agnes's common policies and practices, Smith and the Putative Class Members were denied overtime for all hours worked in excess of 40 hours in a workweek in violation of the FLSA.

66.     St. Agnes knew, should have known, or showed reckless disregard for the fact Smith and the Putative Class Members worked significant overtime without being compensated for the same.

67.     St. Agnes knew, should have known, or showed reckless disregard for the fact the FLSA required it to pay Smith and the Putative Class Members overtime for all hours these employees worked in excess of 40 in a week, regardless of whether St. Agnes approved such hours.

68.     For example, Smith complained to St. Agnes about its failure to pay Smith for all overtime hours worked related to its overtime approval policy and Vesta timekeeping system.

69.     Putative Class Members complained to St. Agnes about its failure to pay Smith for all overtime hours worked related to its overtime approval policy and Vesta timekeeping system.

70.     St. Agnes chose to use the Vesta timekeeping system.

71.     St. Agnes chose to continue using the Vesta timekeeping system after Smith and the Putative Class Members' complaints.

72.     Nonetheless, St. Agnes failed to pay Smith and the Putative Class Members overtime for any "unapproved" or "off the clock" hours these employees worked in excess of 40 in a week.

73.     Nor was St. Agnes's decision not to pay Smith and the Putative Class Members overtime at the proper rate for all hours these employees worked in excess of 40 in a single workweek made in good faith.

## COLLECTIVE ACTION ALLEGATIONS

74.     Smith incorporates all previous paragraphs and alleges that the illegal pay policies and practices St. Agnes imposed on his were likewise imposed on the Putative Class Members.

75.     Numerous individuals were victimized by St. Agnes's pattern, practices, and policies which are in willful violation of the FLSA.

76.     Numerous other individuals, like Smith, indicated they were paid in the same manner and were not properly compensated for all hours worked as required by the FLSA.

77. Based on his experiences and tenure with St. Agnes, Smith is aware that St. Agnes's illegal practices were likewise imposed on the Putative Class Members.

78. The Putative Class Members were all not paid for the hours they worked in excess of 40 in a single week that St. Agnes management had not approved.

79. The specific job titles or precise job locations of the Putative Class Members do not prevent collective treatment.

80. Indeed, as Caregivers, Smith and the Putative Class Members all performed the same general job duties and were subject to the same unlawful policies and practices which are in willful violation of the FLSA.

81. Smith has no interest contrary to, or in conflict with, the Putative Class Members.

82. Like each Putative Class Member, Smith has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

83. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

84. Absent this collective action, many Putative Class Members likely will not obtain redress of their injuries, and St. Agnes will reap the unjust benefits of violating the FLSA and applicable state labor laws.

85. Furthermore, even if some of the Putative Class Members could afford individual litigation against St. Agnes, it would be unduly burdensome to the judicial system.

86. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

87. Smith and the Putative Class Members sustained damages arising out of St. Agnes's illegal and uniform employment policies and practices.

88.     Smith knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

89.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts; therefore, this issue does not preclude collective action treatment.

90.     St. Agnes is liable under the FLSA for failing to pay overtime to Smith and the Putative Class Members.

91.     Consistent with St. Agnes's illegal pay policies and practices, Smith and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

92.     As part of their regular business practices, St. Agnes intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Smith and the Putative Class Members.

93.     St. Agnes's illegal pay policies and practices deprived Smith and the Putative Class Members of the premium overtime wages they are owed under federal law.

94.     St. Agnes is aware, or should have been aware, that the FLSA required it to pay Smith and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

95.     There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

96.     This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

97.     Those similarly situated employees are known to St. Agnes, are readily identifiable, and can be determined through St. Agnes's business and personnel records.

## CAUSE OF ACTION
## FLSA VIOLATIONS

98.     Smith incorporates all previous paragraphs and allegations.

99.     As set forth herein, St. Agnes violated (and continues to violate) the FLSA by failing to pay Smith and the Putative Class Members overtime at 1.5 times their regular rates of pay – as defined by the FLSA – for all hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

100.    At all relevant times, St. Agnes has been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

101.    St. Agnes employed Smith and each Putative Class Member.

102.    St. Agnes's uniform pay policies and practices described in this Complaint denied Smith and the Putative Class Members overtime compensation at a rate not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 in a single workweek, regardless of whether St. Agnes approved such overtime hours or whether they were "off the clock," in violation of the FLSA.

103.    St. Agnes knew, or showed reckless disregard for whether, its failure to pay overtime violated the FLSA.

104.    St. Agnes's failure to pay overtime compensation to Smith and the Putative Class Members was neither reasonable, nor was the decision not to pay overtime made in good faith.

105.    Accordingly, Smith and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rate of pay, plus liquidated damages, attorney's fees, and costs.

## JURY DEMAND

106.    Smith demands a trial by jury.

## PRAYER

WHEREFORE, Smith individually, and on behalf of the Putative Class Members, prays for the following relief:

- 11 -

a.  An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Putative Class Members allowing them to join this action by filing a written notice of consent;

b.  A Judgment against St. Agnes awarding Smith and the Putative Members all their unpaid overtime compensation and an equal amount as liquidated damages;

c.  An Order awarding attorneys' fees, costs, and expenses;

d.  Pre- and post-judgment interest at the highest applicable rates; and

e.  Such other and further relief as may be necessary and appropriate.

Date: January 6, 2025.                    Respectfully submitted,

By:  */s/ Carl A. Fitz*
     **Carl A. Fitz**
     Tex. State Bar No. 24105863
**FITZ LAW PLLC**
3730 Kirby Drive, Ste. 1200
Houston, Texas 77098
(713) 766-4000
carl@fitz.legal

**Attorneys for Plaintiff**